UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

In Re: CHERYL A. REAGAN,
    *Debtor*

Case No. 6:04-77590B
(Ch. 11)

REGIONS BANK,

v.

FREDERICK S. WETZEL, III, Trustee
and CHERYL A. REAGAN, Debtor,

AP No. 6:08-ap-07158

G. LATTA BACHELOR III, successor
Personal Representative of the ESTATE OF
RONALD E. REAGAN, DECEASED,
*Intervenor*

## PRE-HEARING BRIEF

### 1. BACKGROUND

Mr. Ronald E. Reagan (the "**Decedent**"), formerly of Hot Springs, Arkansas, died testate on February 1, 2000. The Decedent's Last Will and Testament (the "**Will**") was entered into probate in the Circuit Court of Garland County, Arkansas on February 17, 2000 (the "**Probate Case**"). The Will named the Decedent's wife, Ms. Cheryl Reagan, a Hot Springs, Arkansas resident, as executrix of the Estate of Ronald E. Reagan (the "**RER Estate**"), and she was appointed executrix of the RER Estate by Order entered in the Probate Case February 17, 2000.

On April 23, 2004, in response to concerns of the beneficiaries of the RER Estate about the dissipation of Estate assets by Ms. Reagan, the Circuit Court of Garland County ("**the Circuit Court**") entered an order in the Probate Case, freezing certain assets of the estate. On May 11, 2004, the Circuit Court expanded the order of April 23, 2004, entering a second order

freezing all assets of the RER Estate and ordering that no assets of the RER Estate be distributed, converted or disturbed without an additional order of the court. Later, on June 22, 2006, intervenor G. Latta Bachelor, the President of Summit Bank of Hot Springs, Arkansas, was appointed successor personal representative of the Estate, by order in the Probate Case.

The total value of the RER Estate on the date of Decedent's death was $19,936,612.00. The Will provides for the distribution of Decedent's assets and **requires** that Decedent's substantial holding of stock in Chem-Fab Corporation, less certain deductions, be distributed to "Trust C" created in the Will. (Will, Item 5.) The bulk of the $19.9 million Estate, i.e., the proceeds of the Chem-Fab stock, was therefore required by the Will to be distributed to Trust C. Under the provisions of the Arkansas Uniform Principal and Income Act, the Chem-Fab stock and its proceeds became subject to Trust C on the date of the Decedent's death. *See* Ark. Code Ann. § 28-70-301(b)(2).

The Will provides that Ms. Reagan is to receive the net income from Trust C during her lifetime, commencing on the date of the Decedent's death.[1] Upon her death, the corpus of Trust C is to be distributed to the remainder beneficiaries or contingent remainder beneficiaries. (Will, Item 6(1)(4).) The remainder beneficiaries of Trust C are the two children of the Decedent from a previous marriage, Rex Reagan and Russell Reagan. The contingent remainder beneficiaries are the surviving children of Rex and Russell Reagan. (Rex and Russell Reagan are living, and there are presently three living grandchildren of the Decedent.)

Six months after the Decedent's death, his Chem-Fab stock sold for $13,109,715.00, in a cash transaction. After allowance for deductions provided in the Will and a disclaimer by Ms.

---

[1] Actually, the Will mandates that the Trustee of Trust C "shall pay to or **apply for the benefit of**" my wife during her lifetime the net income from Trust C. (Emphasis added.) The Intervenor is asking that the net income of Trust C be applied "for the benefit of" Ms. Reagan by payment of the net income to her bankruptcy trustee, Mr. Frederick S. Wetzel, III.

Reagan in favor of Rex and Russell Reagan from the proceeds of the Chem-Fab stock, the net amount to be distributed from the RER Estate to Trust C was $10,724,015.00. The full sales price of the Chem-Fab stock was paid *in cash* into the accounts of the Estate. However, **Ms. Reagan never funded Trust C as required by the Will.**

Instead of funding Trust C and closing the Probate Case, as she should have done, Ms. Reagan left the $10,724,015.00, designated in the Will to fund Trust C and therefore subject to trust, in the RER Estate's bank account, and then proceeded to "invest" the "Estate" assets subject to Trust C in an attempt to "grow" them. Those "investments" included personal loans to herself in excess of $3,500,000.00. Those "investments" led to Ms. Reagan's bankruptcy filing in November of 2004 and the claims of the RER Estate against Ms. Reagan in the bankruptcy case.

In November of 2006, the counsel for the RER Estate and counsel for Ms. Reagan negotiated a settlement of amounts claimed by the RER Estate in the probate proceeding, which settlement was confirmed by the Circuit Court in an order entered on January 5, 2007. Pursuant to this settlement, the RER Estate reduced its claim against Ms. Reagan from $7,496,156.61 to $5,696,156.00, to be allowed as a secured claim in the bankruptcy case. As consideration for this reduction in the claim of the RER Estate, all parties in the Probate Case agreed to, among other things, to a mutual release of claims.

## II.   ARGUMENT

### A.   The Decedent's stock in Chem-Fab Corporation became subject to Trust C on the date of Decedent's death.

The Will states that, "Any stock in CHEM-FAB CORPORATION owned by me at the time of my death . . . **shall** be distributed to my Trustee hereinafter named to be administered under the terms of Trust C as hereinafter set forth[.]" (Will, Item 5.) According to the Arkansas

3

Uniform Principal and Income Act, an asset which becomes subject to a trust by reason of a will is subject to that trust on the date of the testator's death, even where there is an intervening period of estate administration:

> When right to income begins and ends.
>
> (a) An income beneficiary is entitled to net income from the date on which the income interest begins. An income interest begins on the date specified in the terms of the trust or, if no date is specified, on the date an asset becomes subject to a trust . . . .
>
> (b) An asset becomes subject to a trust:
>
> * * *
>
> (2) on the date of a testator's death in the case of an asset that becomes subject to a trust by reason of a will, even if there is an intervening period of administration of the testator's estate . . . .

Ark. Code Ann. § 28-70-301.

The Will required the executrix to transfer the Decedent's shares of Chem-Fab stock to Trust C; the Will also required the trustee of Trust C to begin paying net income from Trust C on the date of Decedent's death. Therefore, under Arkansas law, Ms. Reagan's right to income from the Chem-Fab stock began on February 1, 2000, the date of Decedent's death, and on that same date, the Chem-Fab stock became subject to trust. The proceeds of the sale of the Chem-Fab stock were likewise subject to Trust C, and Ms. Reagan was likewise entitled to the net income produced by those proceeds from February 1, 2000.

The Will did not name Ms. Reagan as the Trustee of Trust C. The Will named a corporate trustee to administer the Trust. The named corporate trustee, Arkansas Bank & Trust Co., was acquired by Regions Bank after the Decedent executed the Will. This corporate trustee of Trust C was given the authority, in the Will, over property that was subject to Trust C. Ms.

Reagan's failure to fund Trust C after she received the cash for the Chem-Fab stock, was directly contrary to the terms of the Will.

The trust remained unfunded during Ms. Reagan's administration of the Probate Estate. However, Ms. Reagan, recognizing that the Chem-Fab stock was subject to Trust C and that she was the lifetime net income beneficiary of that Trust, immediately began paying the income from the proceeds of the Chem-Fab stock to herself.

Ms. Reagan filed this Chapter 11 bankruptcy proceeding on November 17, 2004, four and one-half years after the Decedent's death. At the time this bankruptcy case was filed, the Trust had not been funded. In fact, it was not until after the appointment of the intervenor Mr. Bachelor as successor personal representative of the RER Estate and the conclusion of much litigation with Ms. Reagan that any property was distributed to Trust C. Since Trust C has been partially funded and is producing net income, an issue of whether the net income from Trust C is property of the bankruptcy estate, and therefore distributable to the Chapter 11 Trustee for the benefit of Mrs. Reagan's creditors, has arisen.

In its complaint, Regions Bank seeks a declaration that the net income from Trust C is property of the bankruptcy estate and should be paid to the Bankruptcy Trustee. Ms. Reagan objects. Ms. Reagan seeks to benefit from her own wrongdoing, claiming that her lifetime equitable interest in the net income derived from property subject to Trust C did not exist at the time of, or within 180 days of, the filing of her personal bankruptcy in November of 2004, and therefore is not part of the bankruptcy estate as defined by 11 U.S.C. § 541. (Answer, Crossclaim & Counterclaim, AP Docket #34, at ¶15.)

**B.  Ms. Reagan had an interest in the income from the property subject to trust as of the petition date.**

According to 11 U.S.C. § 541(a)(1), the property of the bankruptcy estate includes "except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case." "Whether property is included in the bankruptcy estate is a question of law." *In re Vote*, 276 F.3d 1024, 1027 (8th Cir. 2002). As a proponent of the exclusion of assets from the bankruptcy estate, Ms. Reagan has the initial burden of production of evidence to meet the elements of an exclusion. *In re Wendt*, 320 B.R. 904, 909 (Bankr. D. Minn. 2005); *Rhiel v. Adams (In re Adams)*, 302 B.R. 535, 540 (B.A.P. 6th Cir. 2003).

Under the terms of Arkansas' Uniform Principal and Income Act, an income interest begins on the date specified in the instrument or, if no date is specified in the instrument, on the date an asset becomes subject to a trust. Ark. Code Ann. § 28-70-301(a). The Will states that "[c]ommencing with the date of my death, my Trustee shall pay to or apply for the benefit of my said wife during her lifetime all of the net income from Trust C". (Will, Item 6 (1).) Ms. Reagan's right to receive income from trust property therefore began on the date of death. Moreover, assets that dedicated in a will to a testamentary trust become subject to the trust on the date of the testator's death. *Id.* § 28-70-301(b)(2). Because Trust C is a testamentary trust, the Decedent's Chem-Fab stock became subject to Trust C on February 1, 2000, the date of the Decedent's death.

Ms. Reagan agrees. In her cross-claim against Mr. Wetzel, Ms. Reagan alleges, "mandatory distribution 'did in fact begin immediately' upon my husband's death and consistently until the FREEZE imposed upon the [Probate] Estate by the ex parte [Order of the Garland Circuit Court.]" (Answer, Cross-claim & Counterclaim, AP Docket #34, ¶ 28.)

6

Although Ms. Reagan's right to receive income from the Chem-Fab stock and its proceeds vested on February 1, 2000, Courts have consistently held that Section 541 applies even to contingent, unvested interests of the debtor. *See Potter v. Drewes (In re Potter)*, 228 F.R. 422, 424 (8th Cir. 1999). "A beneficial interest in a trust is an equitable interest under Section 541(a)(1) despite the fact that at the time of filing a bankruptcy petition the debtor's interest is unvested and contingent." *Yorke v. Bank One Wisconsin Trust Co., N.A. (In re Smith)*, 189 B.R. 8, 10 (N.D. Ill. 1995) (citing *In re Newton*, 922 F.2d 1379, 1382-1383 (9th Cir. 1990)). "The mere fact that the interest of the beneficiary is contingent and not vested does not preclude creditors of the beneficiary from reaching it." *In re Smith*, 189 B.R. at 10-11.

In *In re Smith*, a United States District Court followed the United States Supreme Court and a Court of Appeals in observing that "property of the bankruptcy estate" as used in the Bankruptcy Code must be 'construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed' and that '(e)very conceivable interest of the debtor, future, non-possessory, contingent, speculative, and derivative, is within the reach of § 541.' *In re Smith*, 189 B.R. at 10. The debtor in *In re Smith* was named as a beneficiary in a revocable trust of his aunt. When the debtor filed a voluntary petition for bankruptcy on November 9, 1993, he was still a named beneficiary in his aunt's revocable trust but had no present right to income or principal from the trust. *Id.* at 8-9. Furthermore, the debtor would have had no interest in the trust unless i) his aunt predeceased him, ii) the value of the trust at the aunt's death exceeded specific bequests from the trust to others, and iii) the aunt did not amend the trust prior to her death to exclude the debtor or limit his interest. *Id.* at 10. The debtor's interest in the trust was clearly contingent at the date of the filing of the bankruptcy petition. The aunt died one month later, and the trust became

7

irrevocable at that time. The debtor's interest in the trust consequently vested at the aunt's death. *Id.* at 9, 11. The district court held:

> A beneficial interest in a trust is an equitable interest under § 541(a)(1) despite the fact that at the time of the filing a bankruptcy petition the debtor's interest is unvested and contingent.
>
> \*\*\*
>
> The court therefore finds that [the debtor] held a future contingent beneficial interest ... under the trust at the time he filed his bankruptcy petition, and that this interest is considered part of [his] estate under section 541(a)(1). Because the court affirms the Bankruptcy Court's opinion on these grounds, the court does not reach the issue whether the [trust funds are] part of [the debtor's] estate under section 541(a)(5).

*Id.* at 10-11.

In considering to what extent a debtor's interest in a trust was property of the bankruptcy estate, a Bankruptcy Panel of the Eighth Circuit rejected the contention that the bankruptcy estate's interest was limited to the value of the beneficial interest on the date of filing. The court stated, "Nothing in Section 541 suggests that the estate's interest is anything less than the entire asset." *Potter v. Drewes (In re Potter)*, 228 B.R. 422, 425 (B.A.P. 8th Cir 1999) (holding that the debtor's contingent remainder interest in the corpus of the trust was property of the estate and would be subject to administration in the bankruptcy on the date that the full value was realized).

The Decedent's death occurred on February 1, 2000. His testamentary trust, Trust C, became irrevocable on that date. The Will expressly provided that Ms. Reagan's income interest began on the date of death. Likewise, the Decedent's stock in Chem-Fab Corporation, and therefore the proceeds of that stock, became subject to Trust C on February 1, 2000. As the net income beneficiary of Trust C, Ms. Reagan had a vested, present income interest from February 1, 2000, pursuant to the express terms of the Will and Arkansas' Uniform Principal and Income Act.

8

The intervenor will show at trial that the Decedent's Chem-Fab stock was sold in July 2000, that shortly thereafter Ms. Reagan began receiving income from the proceeds of that sale, and that she continued to collect the gross (instead of the net) income through and after the filing of the bankruptcy petition on November 17, 2004. Based on an accounting report that the Circuit Court ordered Ms. Reagan to prepare, Ms. Reagan received distributions of $1,984,352.00 in interest and dividend income from the proceeds of the Chem-Fab stock through December 31, 2004. Between the filing of the petition on and the appointment of the Bankruptcy Trustee in April 2007, Ms. Reagan received an additional $295,865.35 in income from proceeds of the Chem-Fab stock.

Consequently, Ms. Reagan's income interest in Trust C was already in existence at the filing of the bankruptcy petition, even though legal title to the proceeds of the Chem-Fab stock remained in the probate estate. (Legal title to the trust property had never been transferred to the trustee of Trust C because Ms. Reagan was executrix of the probate estate and refused to transfer title to the trustee.)

C.  **Ms. Reagan's income interest in Trust C should be paid to the Bankruptcy Trustee.**

The Bankruptcy Code provides that the Bankruptcy Trustee "is the representative of the estate." 11 U.S.C. § 323(a). To this end, one of the duties of a Chapter 11 trustee is to "be accountable for property received." *See* 11 U.S.C. §1106(a)(1) (referencing 11 U.S.C. § 704(a)(2)). It is often said that the Bankruptcy Trustee stands in the shoes of the debtor and can bring any lawsuit that the debtor could have instituted if she had not filed for bankruptcy protection. *See Grubin v. Rattet (In re Food Mgmt. Group, LLC)*, 380 B.R. 677 (Bankr. S.D.N.Y. 2008); *Feltman v. LLRG, LP (In re Certified HR Servs. Co.)*, 2007 Bankr. LEXIS 3851 (Bankr. S.D. Fla. 2007); *Yoon v. Krick (In re Krick)*, 373 B.R. 593 (Bankr. N.D. Ind. 2007).

9

In this case, Mr. Wetzel as Bankruptcy Trustee is the representative of Ms. Reagan's bankruptcy estate and is charged with the duty to account for the property of that estate. Because Ms. Reagan has a vested, nondiscretionary and enforceable lifetime income interest in Trust C, and the Bankruptcy Trustee is standing in her shoes, the Trustee should enjoy the same rights the Debtor would have enjoyed in the property subject to Trust C if she had not filed bankruptcy. These rights include the right to compel payment of all the net income from Trust C in convenient installments no less frequently than quarter-annually and to require the trustee of Trust C to make any nonproductive property of this trust productive or to convert such nonproductive property to productive property within a reasonable time. (Will, Item 6 (1)(2).)

In addition, 11 U.S.C. § 543 provides that a custodian of the debtor's property, who has knowledge that a bankruptcy case has been commenced concerning the debtor, may not disburse or take any other action to administer the property or its proceeds or profits except as is necessary to preserve the property. *See* 11 U.S.C. § 543(a). Instead, "a custodian shall—deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian." 11 U.S.C. § 543(b). A "custodian" has been defined by 11 U.S.C. § 101(11)(A) as "[a] trustee of any of the property of the debtor, appointed in a case or proceeding not under this title."

10

Therefore, Regions Bank as the trustee of Trust C, a custodian as defined by 11 U.S.C. §101(11)(A), is required by Section 543 to disburse any net income payable to the Debtor to the bankruptcy trustee.

### D. Mrs. Reagan is estopped from arguing that she had no interest in Trust C as of the petition date.

As the named executrix of Mr. Reagan's Estate, Ms. Reagan had a fiduciary duty to the Estate's beneficiaries. *See* Ark. Code Ann. § 28-2-202(4) (defining a fiduciary as "a personal representative . . . or other person authorized to act as a fiduciary with respect to the property of another"). The express terms of the Decedent's Will required Ms. Reagan, as executrix, to distribute the Chem-Fab stock to the Trustee to be administered under the terms of Trust C. However, instead of using the Chem-Fab stock or its proceeds to fund Trust C and receiving the net income for the remainder of her life, Ms. Reagan breached her fiduciary duty by (among other things) failing to fund the trust, using the proceeds of the Chem-Fab stock for various worthless investments, and helping herself to the gross income that the Chem-Fab proceeds generated.

Ms. Reagan's conduct in distributing the income from the Chem-Fab proceeds to herself even before she filed for bankruptcy demonstrates her recognition of the trust imposed on that property (which trust gave her the right to *net* income from the property for her lifetime). For these reasons, the doctrine of estoppel *in pais*, or estoppel by conduct, should preclude Ms. Reagan from arguing that the Chem-Fab proceeds were not subject to Trust C and that she had no present interest in Trust C as of the petition date. *See Daves v. Hartford Accident & Indemnity Co.*, 302 Ark. 242, 788 S.W. 2d 733 (1990); *Crain v. Foster*, 230 Ark. 190, 322 S.W. 2d 443 (1959).

11

E.  As there is not now, nor has there ever been, probate assets in the bankruptcy estate, *Marshall v. Marshall* has no application to this case.

Ms. Reagan argues in her answer and response to motion to intervene, AP Docket #33, #34, that this Court lacks jurisdiction under *Marshall v. Marshall*, 547 U.S. 293 (2006), to settle complicated probate issues that she contends are presented by the request made by Regions for direction regarding the proper person to receive distributions of net income from Trust C.

The *Marshall* case arose from the death of J. Howard Marshall II ("J. Howard"), who died without providing for his widow, Vickie Marshall, a/k/a Anna Nicole Smith ("Vickie"), in his will. J. Howard's son, E. Pierce Marshall ("Pierce"), was the primary beneficiary of J. Howard's estate. During the Texas probate proceedings in J. Howard's estate, Vickie filed for bankruptcy.

Pierce filed a proof of claim against Vickie in her bankruptcy, alleging she had defamed him. Vickie filed a counterclaim against Pierce, alleging tortuous interference with a gift expected from J. Howard. Both claims were heard in bankruptcy court in an adversary proceeding, resulting in summary judgment being granted to Vickie for Pierce's claim, and a proposed award of millions of dollars in Vickie's favor on her counterclaim. Pierce then filed a motion to dismiss the counterclaim in bankruptcy for lack of subject matter jurisdiction, asserting that Vickie's claim could only be tried in Texas probate court; this motion was denied.

Pierce then appealed to the federal district court, arguing again that the "probate exception to federal jurisdiction applied." The district court did not agree. Pierce next appealed to the Ninth Circuit Court of Appeals, which reversed the district court's ruling. Vickie then appealed this ruling to the United States Supreme Court.

Having accepted the case "to resolve the apparent confusion among federal courts concerning the scope of the probate exception", 547 U.S. at 305, the Supreme Court set forth the following standard:

> . . . [T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Id.* at 311-12. The Supreme Court then reversed the decision of the Ninth Circuit Court of Appeals, clearing the way for the re-instatement of the judgment proposed by the bankruptcy court on Vickie's counterclaim. *Id.* at 314-15.

The complaint by Regions in this proceeding seeks a declaration only as to the net income produced by the corpus of Trust C and whether that net income is property of this bankruptcy estate. The income-producing property in Trust C was transferred from the RER Estate to Regions Bank, Trustee of Trust C. The RER Estate no longer has any title or interest in the property. Nevertheless, because Ms. Reagan continues to raise *Marshall v. Marshall*, the intervenor will show at trial that this Court is not disposing of property in the custody of the Circuit Court or otherwise interfering with the administration of the probate estate.

Pursuant to an order of the Circuit Court entered on January 15, 2008, the intervenor partially funded Trust C in the amount of $2.4 million. (The funding was of shares of real estate investment trusts purchased by the RER Estate with the proceeds of the Chem-Fab stock in 2000 and 2001, as well as the cash proceeds of the shares of certain REITs that liquidated in early 2008.) Neither Ms. Reagan nor this bankruptcy estate has ever had any ownership interest in those assets that were transferred from the probate estate to Regions as trustee of Trust C. The corpus of Trust C is no longer owned by the probate estate, and therefore, neither the corpus nor

income from that corpus can create a jurisdictional problem for this Court under *Marshall v. Marshall*.

From time to time, Ms. Reagan has also argued that sales of real estate by Mr. Wetzel as bankruptcy trustee are forbidden by *Marshall v. Marshall*. To secure the loans that Ms. Reagan made to herself from the probate estate while she was executrix of the that estate, Ms. Reagan executed two mortgages to the probate estate, in September 2003 and November 2004. The properties that were subject to those mortgages were owned by Ms. Reagan and became assets of this bankruptcy estate. As Mr. Wetzel sold these properties, he requested the intervenor as successor administrator of the probate estate to release its mortgages. Pursuant to orders of the Circuit Court and this Court, the intervenor executed the requested releases. None of Mr. Wetzel's sales of real property of this bankruptcy estate involve the administration of probate assets or create a jurisdictional problem for this Court under *Marshall v. Marshall*.

Finally, from time to time, Ms. Reagan denies that all claims among the parties in the Probate Case were settled and that somehow the existence of claims within the Probate Case create a jurisdictional issue for this Court under *Marshall v. Marshall*. This Court relaxed the automatic stay to allow the intervenor to liquidate the probate estate's claims against Ms. Reagan in an order entered on September 11, 2006. (Order, Docket #145.) Those claims, and many others in motions filed by Ms. Reagan, were set for trial in the Circuit Court on November 21, 2006. At the urging of the Circuit Court, the parties in the Probate Case spent the first day of trial negotiating a global settlement of all claims among themselves. A settlement was reached and was read into the record at the end of the day on November 21, 2006. The settlement was confirmed by an order of the Circuit Court entered on January 5, 2007. Ms. Reagan then filed a notice of appeal from the settlement order. Before the appeal was lodged, Mr. Wetzel was

appointed trustee in this bankruptcy case. Mr. Wetzel subsequently settled again with the intervenor, ratifying the original settlement, among other things. (Notice of Settlement, Docket #350.) Following a two-day hearing, this Court likewise approved the settlement reached in the Circuit Court and embodied in the Circuit Court's order of January 5, 2007. (Order, Docket #474.)

In the settlement between the intervenor and Mr. Wetzel, the intervenor agreed to convey to Mr. Wetzel the only two tracts of real property that the Decedent held in his individual name at the time of his death in consideration for the resolution of Ms. Reagan's objections to the January 5, 2007 order. (All other real property of the Decedent was owned jointly with Ms. Reagan and had passed to her pursuant to her right of survivorship upon the Decedent's death.) The Circuit Court also approved the intervenor's settlement with Mr. Wetzel and directed the intervenor to transfer the two tracts to Mr. Wetzel, as trustee in bankruptcy. The intervenor did so; Mr. Wetzel subsequently sold those two tracts. The intervenor's conveyance of the two tracts of property that had originally been owned solely by the Decedent to Mr. Wetzel as bankruptcy trustee, and Mr. Wetzel's subsequent sale of those tracts, do not create a jurisdictional issue for the Court under *Marshall v. Marshall*.

Ms. Reagan's assertions that probate assets have been administered in this bankruptcy is without foundation in fact, and is based on her refusal to accept any ruling of this Court or the Circuit Court since January 5, 2007.

Petitioner Regions Bank, the trustee of Trust C, has received income from the corpus of the Trust, and seeks guidance on its distribution. This is income of the Trust, not income of the Estate of Ronald Reagan, that is sought to be distributed. The issues in the Circuit Court have

been settled, and there is no prohibition against this Court deciding the present question -- to whom should the Trustee of the testamentary trust pay the net income produced by Trust assets?

## CONCLUSION

Ms. Reagan has had a present interest in the net income from the proceeds of the Chem-Fab stock from the date of her husband's death. Because the Bankruptcy Trustee represents Ms. Reagan's bankruptcy estate and stands in her shoes, and because the Bankruptcy Code requires a custodian of her property to turn over such property to the Bankruptcy Trustee, the net income distributed should be paid directly to the Bankruptcy Trustee. Finally, the doctrine of estoppel *en pais* prevents Ms. Reagan from arguing to the contrary.

Respectfully submitted,

LAX, VAUGHAN, FORTSON,
McKENZIE & ROWE, P.A.
Cantrell West Building
11300 Cantrell Road, Suite 201
Little Rock, AR 72212
(501) 376-6565 ph
(501) 376-6666 fx


By: /s/ Roger D. Rowe
Roger D. Rowe (85140)
Sammye L. Taylor (83241)
Phyllis M. Jones (97118)
*Attorneys for G. Latta Bachelor, successor Personal Representative of the ESTATE OF RONALD E. REAGAN, deceased*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of March 2009, I served by United States Mail a copy of the foregoing to the following:

Guy W. Murphy, Jr., Esq.
HYDEN, MIRON & FOSTER, PLLC
557 Locust Street
Conway, AR 72034
*Attorneys for Plaintiff Regions Bank*

Frederick S. Wetzel, III, Esq.
Trustee
200 N. State Street, Suite 200
Little Rock, AR 72201
*Chapter 11 Trustee*

Cheryl A. Reagan
c/o Joan Mawn
1005 South 24th Street
Ft. Smith, AR 72901
*Debtor*

/s/ Roger D. Rowe
Roger D. Rowe