IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

In Re: Cheryl A. Reagan, Debtor          Case No: 6:04BK77590B
                                                   6:08-ap-7158

FREDERICK S. WETZEL, III, Trustee
and G. LATTA BACHELOR, III, successor
Personal Representative of the ESTATE
OF RONALD E. REAGAN, DECEASED                              APPELLANTS

v.                         CASE NO. 09-CV-6075

REGIONS BANK and
CHERYL A. REAGAN                                            APPELLEES

## MEMORANDUM OPINION

This is a bankruptcy appeal. On July 21, 2009, the Honorable Ben T. Barry, United States Bankruptcy Judge, Western District of Arkansas, entered final judgment in the adversary proceeding styled *Regions Bank v. Wetzel, et al.*, USBC AP No. 6:08-ap-07158 (Bankr. W.D. Ark). We have jurisdiction pursuant to 28 U.S.C. § 158, and for reasons reflected herein, the judgment is **AFFIRMED**.

**A. Background**

Ronald E. Reagan died February 1, 2000, leaving an estate valued at $19,936,612.00. Prior thereto, Mr. Reagan executed a valid will that, *inter alia*, created a spendthrift trust naming Mr. Reagan's wife, Cheryl, as its beneficiary. The spendthrift provision stated:

> Except as otherwise provided herein, all payments of principal and income payable, or to become payable, to the beneficiary of any trust created hereunder shall not be subject to anticipation, assignment, pledge, sale or transfer in any manner, nor shall any said beneficiary have the power to anticipate or encumber such interest, nor shall such interest, while in the possession of my

> Executor or Trustee, be liable for, or subject to, the debts, contracts, obligations, liabilities or torts of any beneficiary.

Under the terms of the trust,

> Commencing with the date of my death, my Trustee shall pay to or apply for the benefit of my said wife during her lifetime all the net income from [the spendthrift trust] in convenient installments but no less frequently than quarter-annually.

The will also appointed Mrs. Reagan to serve as executrix, and in that capacity, directed her to fund the trust by distributing the decedent's stock in the Chem-Fab Corporation ("Chem-Fab"), less certain deductions, to the trustee, designated as Arkansas Bank & Trust of Hot Springs, Arkansas.

Contrary to the instructions set forth in the will, Mrs. Reagan failed to fund the trust. Rather, she utilized the proceeds from the sale of the Chem-Fab stock to finance a series of business ventures that ultimately proved unsuccessful. On April 23, 2004, the Circuit Court of Garland County, Arkansas ("probate court"), ruling on an *ex parte* petition by Rex Reagan, one of Mr. Reagan's sons and beneficiaries, froze the assets of Mr. Reagan's estate. This relief was made permanent on May 11, 2004.

Mrs. Reagan filed a Chapter 11 bankruptcy petition on November 17, 2004. In June 2006, Latta Bachelor was appointed successor personal representative of Mr. Reagan's estate. On April 17, 2007, the bankruptcy court granted relief from the bankruptcy stay to Mr. Reagan's estate, enabling administration of the estate in the

probate court.  The probate court authorized the funding of the spendthrift trust on January 15, 2008, utilizing the proceeds from certain investments in the amount of $2,400,000.00.  Regions Bank was appointed trustee.

On September 23, 2008, as the trust began to generate income, Regions Bank filed an interpleader action in the bankruptcy court; Mr. Reagan's estate intervened.  Regions Bank requested that the bankruptcy court determine whether the bankruptcy estate or Mrs. Reagan was entitled to the present and future income from the spendthrift trust.  The court determined both the present and future income to be payable to Mrs. Reagan.

**B. Standard of Review**

The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. *See* Fed. R. Bankr. P. 8013.  Conclusions of law are reviewed *de novo*, while factual findings will not be set aside unless "clearly erroneous."  *Id.*; *In re Muncrief*, 900 F.2d 1220, 1224 (8th Cir. 1990).  "A finding is 'clearly erroneous' when, although there is evidence to support it, the court reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.*, 151 B.R. 492, 494 (W.D. Ark. 1993).

**C. Discussion**

Frederick Wetzel, trustee of Cheryl Reagan's bankruptcy

estate, and Latta Bachelor, personal representative of the estate of Ronald Reagan, appeal the order of the bankruptcy court determining that Mrs. Reagan is entitled to the present and future income from the spendthrift trust established by the will of Mr. Reagan.  Thus, this Court must address two issues: (1) whether the bankruptcy court's determination that income from the spendthrift trust was not unreasonably withheld from Mrs. Reagan is clearly erroneous; and (2) whether the bankruptcy court properly determined that prospectively earned income from the spendthrift trust is not property of the bankruptcy estate.

The property that comprises the bankruptcy estate is defined in the bankruptcy code.  It provides in relevant part that the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement" of the bankruptcy case. 11 U.S.C. § 541(a)(1).  This definition is subject to exceptions. Of particular relevance, a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."  11 U.S.C. § 541(c)(2).  In the present case, it is undisputed that the "restriction on the transfer" language of this exception is a reference to an interest in a spendthrift trust and that the "applicable nonbankruptcy law" is that of Arkansas.

Pursuant to Arkansas law, a trust beneficiary has an equitable interest in trust property.  *Adamson v. Sims*, 85 Ark.App. 278, 283,

151 S.W.3d 23, 26 (2004); *In re Smith*, 189 B.R. 8, 10 (N.D. Ill. 1995) ("A beneficial interest in a trust is an equitable interest under § 541(a)(1)."). Therefore, as a threshold matter, a debtor's interest in a trust meets the requirements of section 541(a)(1), and but for an applicable exception, here section 541(c)(2), the debtor's interest would be included in a bankruptcy estate. *In re Vogel*, 16 B.R. 670, 672 (Bankr. S.D. Fla. 1981). For this reason, Appellants present arguments concerning the alleged inapplicability of section 541(c)(2).

Appellants contend that Regions Bank unreasonably withheld trust distributions from Mrs. Reagan, and therefore, the distributions are not entitled to spendthrift protection under Arkansas law. The Arkansas trust code provides:

> Whether or not a trust contains a spendthrift provision, a creditor or assignee of a beneficiary may reach a mandatory distribution of income or principal, including a distribution upon termination of the trust, if the trustee has not made the distribution to the beneficiary within a reasonable time after the designated distribution date.

Ark. Code Ann. § 28-73-506. Under this section, if a trustee fails to make a timely distribution from the spendthrift trust, the distribution, even while under the control of the trustee, can be reached by creditors. Thus, because there is no enforceable "restriction on the transfer" of the trust distribution under Arkansas law, section 541(c)(2) would be inapplicable, and the untimely distribution could be included in the bankruptcy estate.

The Arkansas trust code does not define the term "reasonable time." However, pursuant to the uniform comments, "[t]he question of what period of time is reasonable turns on the totality of factors affecting the asset and the trust." Ark. Code Ann. § 28-73-904. The evidence presented to the bankruptcy court reflects that the probate court entered an order directing the funding of the trust on January 15, 2008. Subsequently, Mr. Bachelor, as successor personal representative, initiated the process of transferring assets from Mr. Reagan's estate to Regions Bank. At least as late as September 8, 2008, Regions Bank continued the process of finalizing its documentation relating to trust assets. Regions Bank filed its interpleader action September 23, 2008.

It is undisputed that the trust earned income between January and September 2008. According to Mr. Reagan's will, the trustee was required to make net income distributions "no less frequently than quarter-annually." It is undisputed that these distributions were not made. However, as the bankruptcy court noted, the failure of Regions Bank to make said distributions must be evaluated against the backdrop of the multi-year bankruptcy proceeding of Mrs. Reagan, with multiple counsel and more than one thousand filings, and the difficulty faced by Regions Bank in acquiring and finalizing the assets of the trust. Whether Regions Bank acted in a "reasonable time" is a factual determination to be reviewed by this Court for whether it is "clearly erroneous." *In re U.S.A.*

*Inns of Eureka Springs*, 151 B.R. at 494.  Based on the broader context of this case, the bankruptcy court's determination was not clearly erroneous and is therefore affirmed.  This Court further affirms the bankruptcy court's finding that any attempt to retroactively determine the earnings of the trust, had it been funded in February 2000 as directed by Mr. Reagan's will, would be speculative; these hypothetical earnings were not unreasonably withheld from Mrs. Reagan.  Therefore, the ability of creditors to reach withheld spendthrift-trust income pursuant to Ark. Code Ann. § 28-73-506 does not render 11 U.S.C. § 541(c)(2) inapplicable in the present case.

   Appellant Bachelor further contends that the bankruptcy court erred in its determination that prospectively earned income from the spendthrift trust is not property of a bankruptcy estate.  His key argument concerns the interpretation to be given to the decision of the United States Supreme Court in *Patterson v. Shumate*, 504 U.S. 753 (1992).  He states that the case stands for the proposition that the protection afforded to an interest in a spendthrift trust must be the same in bankruptcy as that afforded outside of bankruptcy.  Under this logic, because outside of bankruptcy, a creditor can execute on income paid from a spendthrift trust at the moment it is received by the debtor, the same creditors' rights must exist inside bankruptcy.  In other words, because under Arkansas law income distributions are not

protected once distributed by the trustee, the income must be included in the bankruptcy estate.  Ark. Code Ann. § 28-73-502 (stating that a creditor "may not reach the interest or a distribution by the trustee *before its receipt by the beneficiary*") (emphasis added).

The scope of the bankruptcy estate is defined by 11 U.S.C. § 541.  "The relevant moment for determining whether property constitutes the bankruptcy estate is 'as of the commencement of the case.'" *In re Nelson*, 322 F.3d 541, 544 (8th Cir. 2003) (quoting 11 U.S.C. § 541(a)(1)).  With this baseline rule in mind, the Court must turn to two potential statutory bases for inclusion of post-commencement trust income.  First, certain property acquired within 180 days of the filing of the bankruptcy petition can be included in the estate. 11 U.S.C. § 541(a)(5).  Second, the proceeds and profits of property of the bankruptcy estate are included.  11 U.S.C. § 541(a)(6).

Evaluating these bases, it is undisputed that Mrs. Reagan filed her bankruptcy petition on November 17, 2004, and that the spendthrift trust created by Mr. Reagan's will did not produce income until sometime in 2008.  As this Court has determined, it would be speculative to attempt to retroactively determine what the trust earnings might have been in 2004, immediately following Mrs. Reagan's bankruptcy filing.  As a result, because they cannot be computed, none of the distributions could have been acquired within

180 days of Mrs. Reagan's Chapter 11 filing, and section 541(a)(5) is therefore inapplicable.  Further, having already found that the spendthrift interest is excluded from the bankruptcy estate, the distributions from the trust cannot be considered proceeds or profits of estate property, and as a result, section 541(a)(6) does not apply.  *In re Moses*, 167 F.3d 470, 473 (9th Cir. 1999) (holding spendthrift trust excludes trust corpus).  Therefore, Appellant Bachelor has provided no statutory basis for inclusion of the spendthrift distributions in the bankruptcy estate.

In the absence of a statutory basis for including the distributions, Appellant Bachelor contends that the decision of the bankruptcy court that future income distributions be made to Mrs. Reagan is contrary to the precedent of the Supreme Court as announced in *Patterson v. Shumate*.  In *Patterson*, the Court held that the antialienation provision in a qualified ERISA plan was a restriction on transfer enforceable pursuant to section 541(c)(2) and therefore properly excluded from the bankruptcy estate.  504 U.S. at 760.  In so holding, the Supreme Court stated that its decision "ensures that the treatment of pension benefits will not vary based on the beneficiary's bankruptcy status."  *Id*. at 764.  Appellant Bachelor interprets the Court's statement as a bright line rule that requires uniformity of creditors' rights irrespective of bankruptcy status when section 541(c)(2) is the basis for property exclusion.

Appellant Bachelor's argument is misplaced for three reasons. First, as a matter of statutory construction and as stated, he has provided no basis under section 541 for including the trust distributions. Section 541(c)(2) speaks only in terms of interests; a beneficiary of a spendthrift trust has a beneficial interest in trust income. *Medical Park Hosp. v. Bancorp South Bank of Hope*, 357 Ark. 316, 327-28, 166 S.W.3d 19, 26 (2004). Utilizing section 541(c)(2) to exclude an interest while including the income stream that represents the beneficial interest is a strained interpretation at best. Second, the bankruptcy court made no determination regarding the rights of creditors to the spendthrift income; it only held that the income was not part of the bankruptcy estate. The issue of whether Appellant Bachelor may be entitled to additional relief, so as to permit access to the income from the trust, was not before the bankruptcy court. Finally, even granting credence to Bachelor's uniformity argument, Arkansas law provides that a creditor may not attempt to reach the distribution "*before its receipt* by the beneficiary." Ark. Code Ann. § 28-73-502 (emphasis added). However, contrary to the terms of the statute, Bachelor attempts to prevent receipt. Therefore, on the issue of whether prospectively earned income from the spendthrift trust is payable to Mrs. Reagan, this Court affirms the statutory interpretation of the bankruptcy court.

**D. Conclusion**

For reasons recited herein, we find that the bankruptcy court's determination regarding income distributions was not clearly erroneous and that the bankruptcy court properly determined that prospectively earned income from a spendthrift trust is not property of a bankruptcy estate.  Accordingly, the judgment of the bankruptcy court is **AFFIRMED**.

IT IS SO ORDERED this 15th day of April 2010.

>  */s/ Robert T. Dawson*
>  Honorable Robert T. Dawson
>  United States District Judge